UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREGORY CELKO,<br>      Plaintiff<br><br>DAEWOO HEAVY INDUSTRIES<br>AMERICAN CORPORATION<br>AND NATIONSRENT, INC.,<br>      Defendants | CIVIL ACTION NO.: 03-40029 |
| GREGORY CELKO,<br>      Plaintiff<br>v.<br>DAEWOO HEAVY INDUSTRIES<br>AMERICA CORP.,<br>      Defendant | CIVIL ACTION NO.: 04-40150-CBS |

**MOTION BY PLAINTIFF GREGORY CELKO TO PRECLUDE
ADDITIONAL EXPERT TRIAL TESTIMONY, WITNESSES OR
OPINIONS NOT TIMELY DISCLOSED; TO PRECLUDE TESTIMONY
AT VARIANCE WITH RULE 26 REPORT; AND OBJECTION TO
<u>PURPORTED OPINIONS AND BASES DESIGNATED IN EXPERT DISCLOSURE</u>**

Plaintiff Gregory Celko hereby moves for entry of appropriate Orders consistent with Local Rule 26.4. <u>See</u> L.R. 26.4 (Special Procedures For Handling Experts).

These consolidated actions arise from severe personal injuries to Mr. Celko which occurred on October 26, 2000. Celko was a construction worker working adjacent to defendant's Daewoo 290 LC-V excavator when an "OEM" (original equipment) hydraulic hose failed causing the digger arm to lose hydraulic power. The arm free fell and could not

be controlled by the operator, causing the bucket to pierce Celko's torso, fracture his shoulder, break teeth and inflict various other injuries. Celko has undergone approximately four surgeries to repair the shoulder injuries and never regained full use or strength of his shoulder. He has permanent scarring and atrophy on his torso and upper extremity.

## PROCEDURAL BACKGROUND

On February 11, 2003, Plaintiff filed C.A. No. 03-40029-NMG (now, -CBS). Judge Gorton held a Rule 16 Scheduling Conference and issued a Scheduling Order Daewoo was Ordered to designate and conduct Rule 26 disclosure by March 31, 2005. Because of discovery non-compliance by Daewoo, Celko sought the intervention of this Court.

On February 22, 2005, this Court (Swartwood, C.M.J. issued an Amended Scheduling Order which stated

> Daewoo's experts shall be designated and reports served by <u>June 20, 2005</u> and those experts shall be deposed by <u>July 20, 2005</u>.

At the amended disclosure date, Daewoo still had not engaged or provided the potential expert witness with evidentiary materials or discovery and he had not ever inspected the excavator, site or materials in police custody. Daewoo requested additional time from Celko to comply with the Order. Celko granted the extension.

On July 5, 2005, Daewoo obtained a putative expert report from Affiliated Engineering Laboratories, Inc. <u>See</u>, Ex. A. As set out below, the report is wrong about

material matters of record and is incompetent on certain other issues. The proposed witness fails to demonstrate the requisite knowledge of the facts, the product at issue, and construction methods about which he is proffered as expert. This Court should enter appropriate Orders to prevent Daewoo from supplementing or changing the proposed opinions and to exclude certain testimony.

I. DAEWOO SHOULD NOT BE PERMITTED "TO AMPLIFY" REPORT OR INTRODUCE NEW OR DIFFERENT TESTIMONY AT TRIAL.

In his report, the witness acknowledges his lack of familiarity with important facts and sua sponte "reserves the right to amplify the opinions rendered herein upon receipt of additional information." Ex. A, at p. 4. Celko objects and moves for Orders consistent with L.R. 26.4, precluding any testimony in addition to or at variance with the report and to preclude all undisclosed, incompetent, or unsupportable opinions or testimony at trial. L.R. 26.4(B)(2), (4).

Daewoo has no right or excuse "to amplify" its erroneous or deficient expert disclosures. Indeed, Daewoo purposely chose not to timely engage a qualified expert at the time of the accident, when process was served, or even when Judge Gorton set the Rule 26 deadline. Daewoo attended an inspection of evidence in police custody <u>without an accompanying expert</u>. Daewoo purposely did not permit the proposed witness to conduct

---

[1] Celko does not fault the proposed witness for lack of familiarity with the product about which he is supposed to be an "expert," about his lack of knowledge concerning matters of long-established record in this action, or other errors in the rushed report. As is characteristic of Daewoo's handling of this claim, Daewoo failed to provide the witness with complete and accurate information within an appropriate timeframe to enable the expert to be helpful to a jury or the court. See, *Hochen v. Bobst Group, Inc.*, 290 F.3d 446, 453-76 (1st Cir. 2002) (expert disqualified because testimony demonstrated "that he had not gained the requisite degree of knowledge and familiarity with the machine so as to be able to render reliable testimony"). There is no valid excuse for noncompliance which would permit Daewoo to supplement. Daewoo itself investigated the accident in 2000 and was fully aware that serious injury occurred. Later, in 2003, Judge Gorton gave Daewoo 16 full months to retain and prepare an expert for disclosure.

3

the customary inspection of <u>all</u> discovery and the physical evidence as a tactical ploy to gin up a "spoliation" of evidence defense[2] in this matter. As a result of this strategy, the witness lacks essential knowledge to be qualified to testify about certain matters in his report.

A party is not relieved of its own neglect where, here, Daewoo's inaction results from a tactical decision to bolster a defense such as spoliation. See, e.g., *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000) ("deliberate, strategic choices" by litigant cannot be excused); *Kaercher v. Trustees of Health and Hospitals of Boston*, 834 F.2d 31, 34-35 (1st Cir. 1987) ("pattern of delay and neglect" by litigant precludes Court from permitting party to flout rules); *Salter v. Hooker Chemical*, 119 F.R.D. 7, 8-9 (W.D.N.Y. 1988) (failure to properly prepare for trial is not excusable neglect); *First National Life Ins. Co. v. California Pacific Life Ins. Co.*, 876 F.2d 877, 882 (11th Cir. 1989) (failure to meet deadlines cannot be excused; District Court properly found that "nothing prevented [litigant] from submitting such materials in a timely manner").

The witness must be bound to his July 5, 2005 Report and cannot be permitted to alter, add to, "amplify," or supplement his opinions or testimony or otherwise give testimony at variance with the report. L.R. 26.4. Any testimony, if admissible at all, must be consistent with the Rule 26 Report and any after-acquired knowledge or opinions specifically should be excluded.

---

[2] As the Court is aware from other motions, the Shrewsbury Police apparently have misplaced the failed hose, but this occurred <u>after</u> Daewoo measured, photographed, and inspected the hose, the fitting, the excavator and the site of the accident. The putative expert never sought to inspect, measure or test the fitting or other evidence before preparing his Rule 26 report.

II.  **THIS COURT FURTHER SHOULD EXCLUDE UNSUPPORTED, INCOMPETENT, AND ERRONEOUS TESTIMONY AND OPINIONS.**

    A.  Witness Failed To Speak With Daewoo Employees And Has No Foundation For Opinions.

At pages 2 and 3 of the report, the witness indicates reliance on inspection notes by Daewoo's Mr. Hynes, but cannot form an opinion because "Mr. Hynes does not provide narrative regarding specific observations of the delaminated hose and whether or not there was a failure of the inner liner in the location of the delamination ...." Ex. A, pp. 2, 3. Hynes still is employed by Daewoo, and he testified extensively in this action. Hynes' testimony is available in transcript and on videotape and at all times was available to the proposed witness. Moreover, the putative expert witness could have, and should have, met with Hynes and debriefed him sometime in the five (5) years between the accident and the July 5, 2005 Report on any important observations about which "narrative regarding specific observations" was needed. The unexcused failure by Daewoo to facilitate any background investigation by the witness precludes Daewoo from introducing later opinions concerning trial issues. Moreover, the scientific or technical methods utilized by the witness are not reliable and he lacks basic knowledge to testify in this matter. Fed. R. Evid. 702.

    B.  Daewoo Failed To Provide The Witness With Complete Documentation About Hose Recall; The Expert Cannot Do "Further Research" Regarding Matters Withheld By Daewoo.

The witness claims that he cannot assess whether the failed hoses on the incident excavator should have been part of the Daewoo recall campaign. The subject machine had several <u>prior</u> hose failures, all consistent with the defect that led to the product recall by

5

Case 4:04-cv-40150-CBS   Document 12   Filed 07/12/2005   Page 6 of 16

Daewoo, which had been instituted <u>before</u> the Celko accident. Daewoo has failed to provide complete and accurate records concerning recalled hoses to Celko <u>and the expert</u>. Even if the recall campaign were limited to just a small number of specific excavators – which is denied – the multiple hose failures on the subject machine proves that Daewoo was negligent in conducting the too-limited recall, <u>see</u>, RESTATEMENT (THIRD) TORTS – PRODUCTS LIABILITY, §11(a)(2), (b) and comment c (where distributor voluntarily recalls product, it can be liable for failure to act reasonably in recalling product), and breached Daewoo's post-sale duty to warn known owners about the hose failure hazard. <u>Vassallo v. Baxter Health Care</u>, 428 Mass. 1, 696 N.E.2d 909 (1998); <u>Lewis v. Ariens Co.</u>, 434 Mass. 643, 644-48, 751 N.E.2d 862 (2001). Moreover, trial evidence may establish that the recall in fact was broader than claimed and that altered and incomplete recall records were produced by Daewoo in discovery.

Thus, if "[i]n the writer's opinion, there is *insufficient data at the present time* to reach this conclusion [about the recall]" (emphasis added), the witness should not be permitted to weigh in on the issue at all. Ex. A. The Scheduling Order, as amended, provided almost five years from accident to disclosure deadline for the witness to obtain, analyze and opine about "sufficient data." Daewoo's failure or tactical refusal to permit the witness to do so should bar his testimony. At a minimum, the witness must be bound to his knowledge "at the present time", <u>i.e.</u> when his final trial opinions were ordered to be disclosed. The witness also writes that he should conduct "further research" about the product recall to be able to opine. Celko requested all such recall research materials during discovery and they were suppressed. Daewoo now has no right to provide incomplete,

6

partial disclosure at the expiration of the Amended Disclosure deadline (as extended) and to sandbag Celko with complete opinions later. Daewoo should be barred from introducing any additional evidence about the recall that they refused to provide during discovery.

    C.    "Expert" Is Unaware About The Design, Availability And Function Of Daewoo's Own Lock Valve Optional Safety Device.

The proposed expert admits he is unfamiliar with the availability and function of the Load Holding Valve designed and manufactured by Daewoo to prevent free fall of the boom and arm in the event of hydraulic hose failure. The witness contends that

> "the subject excavator was not defective due to the lack of a lock valve. There existed no known code or standards requiring the use of the device when the machine was manufactured and sold."

Ex. A, at p. 3. Record testimony by Daewoo, however, establishes that both Canada's and the European Union's safety codes required the hydraulic safety device on excavators sold in Europe and Canada.

Daewoo always provided the safety device in the EU and Canada. The device was available and feasible. The absence of a relevant safety regulation does not establish standard of care or that the product is not defective. Industry standards are admissible as <u>minimum</u> standards of safety. Daewoo witnesses admit they chose not to offer the available safety device for sale in the U.S. but sold them elsewhere. Thus, the witness again has inadequate foundation to testify in this case and he is not reliable, due to insufficient preparation. Even if his assertion about the device's non-availability when this machine was sold were accurate, it is irrelevant. Whether Daewoo did or did not sell an

available, feasible safety feature at a given time is not dispositive of warranty liability or negligence. Moreover, the writer cannot state that the device was not "feasible" since Daewoo manufactures and sells the lock valves and they are in Daewoo's current price lists (although never offered to buyers).

The witness apparently was not made aware that Daewoo manufactured the optional safety device as early as 1998, according to Daewoo's own documents produced in this case. Daewoo has suppressed 2000 and earlier price lists, maintenance manual, and other documents, perhaps to bolster an insubstantial defense, <u>viz.</u> that Celko cannot prove when the safety device was first available. Celko requests appropriate Orders to preclude Daewoo from benefiting from its sleight-of-hand discovery about the first offering date for the "optional" safety device. The witness admits he has no knowledge about the topic, and he purposely was not given an exemplar of the lock valve device. He simply is not an expert concerning the device or any related issues.

    D.    Witness Has No Expertise In Construction Site Methods And Cannot Testify About Unidentified Safety Violations.

The witness is not an expert in construction methods or site safety. Daewoo has failed to disclose the witness' purported expertise in the field of construction safety, regulations or safety standards. Whether a safety code section is admissible is a preliminary question for the Court, see, *Torre v. Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 672-73 (1980); Fed. R. Evid. 104. Rule 26 requires a <u>complete</u> statement of all trial opinions and the basis of each opinion, along with all supporting data underlying the opinion. Fed. R. Civ. P. 26(a)(2)(B). According to the Rule 26 materials and curriculum vitae, the witness has no expertise or experience to offer on construction safety or methods

that would make him helpful to the Court or jury. Ex. B. Moreover, the failure to identify the purported codes to enable the Court to exercise its Rule 104 duty requires exclusion.

The witness report implies that Celko and others violated some unidentified "applicable industry codes, standards and good work practices," Ex. A, p. 3, but the Report fails to identify any supporting body of authority by source, citation or treatises. The Report violates Rule 26 in this regard. The only OSHA violation cited was a minor, irrelevant "hard hat" violation that did not cause the accident or exacerbate the injuries. The Report demonstrates that the witness has absolutely no expertise or understanding about the construction task involved, the need for workers to be in a trench box, or other basic information that might make his testimony admissible at trial.

## CONCLUSION

Celko respectfully requests the following relief:

1       That appropriate Orders be entered precluding the witness from deviating or "amplifying" the purported expert report; and

2.      The Court limit or exclude incompetent, unsubstantiated or unsupported testimony resulting from Daewoo's failure to permit the witness to adequately prepare and conduct independent investigation; and

3.      Preclude reference at trial to unidentified industry or governmental standards, codes, or regulations or reference to documents or information that were not produced to Celko; and

4.      Exclude any testimony about construction site methods and/or safety practices or putative OSHA violations by Celko or his co-workers as a cause of the accident; and

5.      All other Orders that are necessary and just.

> Plaintiff,
> GREGORY CELKO
> By his Attorneys,
>
> _____
> Kevin G. Kenneally, Esq.
> BBO No. 550050
> DONOVAN HATEM LLP
> Two Seaport Lane
> Boston, MA  02210
> (617) 406-4500

Dated: July __, 2005
00930717.DOC



I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL/HAND ON 7/12/05

10

# AFFILIATED ENGINEERING LABORATORIES, INC.
*Engineering Consultants*

1101 Amboy Avenue
Edison, NJ 08837-2856

Phone: (732) 225-0360                                                                                   Fax: (732) 417-0165

July 5, 2005

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
155 Federal Street
Boston, Massachusetts 02110

Attention: Christopher P. Flanagan, Esq.

      Re:    Gregory Celko v. Daewoo Heavy Industries
               America Corporation, et al
               Our File No. Q-9337

Dear Mr. Flanagan:

      In accordance with your request, the writer has reviewed file material pertinent to the captioned matter including the following:

      Complaint (C.A. 03-40029);
      Complaint (C.A. 04-40150);
      Plaintiff's Answers to DHIAC's Interrogatories;
- Plaintiff's Answers to NationsRent, Inc.'s Interrogatories;
- Plaintiff's Expert Witness Disclosures;
- DHIAC's Initial Disclosure;
- Correspondence of November 26, 2004 to plaintiff's counsel with additional documents;
- Correspondence of March 24, 2005 to plaintiff's counsel with additional documents;
- Correspondence of April 6, 2005 to plaintiff's counsel with additional documents;
- Correspondence of April 8, 2005 to plaintiff's counsel with additional documents;
- DHIAC's Answers to NationsRent, Inc.'s Interrogatories;
- DHIAC's Further Supplemental Answers to NationsRent, Inc.'s Interrogatories;
- Deposition Transcript of Monroe Davis of DHIAC;
- Deposition Transcript of Patrick Hynes of DHIAC;
- Deposition Transcript of George Valencia of DHIAC;
- Deposition Transcript of DeLancey D. Wayne of DHIAC;
- Amended Answers of Defendant, NationsRent, Inc. to Interrogatories of Co-Defendant Daewoo Heavy Industries Corp.



EXHIBIT C

Ex. A

Re: Gregory Celko v. Daewoo Heavy Industries
America Corporation, et al
June 20, 2005
Page 2 of 4

    NationsRent, Inc.'s Document Responses;
    Deposition Transcript of Arnie Buzzell of NationsRent, Inc.
    Shop Manual for Solar 290LC-V; and
    DHIAC sales brochures.

Based upon this file material, the writer has developed the following understanding.

It is the writer's understanding the plaintiff alleges that on 10/26/00, Mr. Gregory Celko sustained injuries while working at a construction site and positioned inside a shoring box when the bucket of a Daewoo, Model Solar 290-LCV hydraulic excavator, struck him. The arm of the excavator allegedly fell when a hydraulic hose that supplied hydraulic fluid to the arm cylinder detached. At the time of this incident, the excavator had approximately 1300 operating hours recorded on the hour meter and the machine was approximately one year old.

An expert report prepared by Dyer E. Carroll, Jr., P.E. alleges that:

- The left most hose failed by pulling out of the crimped fitting on the boom end of the hose.

  The failure of the hose was the result of a defective crimp.

- Daewoo knew at least 4-½ months before this accident that there were Chunji hoses on Solar LC-V 290 excavators that were defectively crimped. It was negligent to fail to vigorously pursue the safety recall of such critical parts. This negligence was directly causative of the subject accident.

  Hose burst valves are safety devices intended to prevent the hydraulic cylinders from moving uncontrollably in the event of a hose failure. Daewoo should have vigorously attempted to educate Nations Rent in the desirability of equipping their machine with these devices.

In regard to these allegations, based upon my engineering education, training and experience, as well as my knowledge of construction equipment, the writer offers the following comments and opinions to a reasonable degree of engineering certainty:

The hose that allegedly failed was reportedly lost while in the control of the Shrewsbury Police Department and, therefore, is no longer available for examination. The absence of the incident hose does hamper the writer's ability to fully explore the precise failure mode and precludes the writer from determining the specific cause of failure to a reasonable degree of engineering certainty. The photos that have been provided show that the hose outer layer with braided ply has delaminated. The length of the delamination was referenced in the inspection

Re: Gregory Celko v. Daewoo Heavy Industries
    America Corporation, et al
June 20, 2005
Page 3 of 4

notes of Mr. Hynes as being 1.7". Mr. Hynes does not provide narrative regarding specific observations of the delaminated hose and whether or not there was a failure of the inner liner in the location of the delamination, or if the inner core showed evidence of failure. The end fitting is designed to hold the hose in place by introducing mechanical interference between the fitting and the hose. The photos depict damage to the hose that provides scientific evidence the incident hose was mechanically restrained by the fitting.

Mr. Carroll implies that since this machine was a model Solar 290 LC-V and that this machine was part of a hose recall campaign, Daewoo was negligent in not vigorously pursuing the safety recall of the hydraulic hoses on this machine. The testimony offered by DHIAC personnel fails to support Mr. Carroll's allegation that the subject machine was part of the hose recall campaign. The lists of recalled machines that were provided to DHIAC and are referenced in the deposition exhibits did not include this machine number. Therefore, the writer is unable to conclude that DHIAC should have vigorously pursued recalling the hoses on this machine, as alleged, since this machine was not part of the recall campaign. It would be presumptuous to assume that just because this hose failed, that it should have been included in the recall campaign, or that DHIAC should have somehow known that this hose should have been included in this particular campaign.

In the writer's opinion, there is insufficient data at the present time to reach this conclusion. More information is needed to determine the basis in which the hoses were selected for inclusion in the recall campaign before reaching any conclusions as to whether this machine should have been included. Usually the decisions for determining which machines need to be included in a recall are based on a specific lot or date of manufacture. The criteria that was used to select the hoses included in this recall requires further research before reaching a scientific conclusion as to whether or not the recall should have been expanded to include additional machines.

The subject excavator was not defective due to the lack of a lock valve. There existed no known code or standard requiring the use of this device when this machine was manufactured and sold. Mr. Carroll states that this device was available for this machine, but fails to cite the source of this information. The writer has been unable to establish that this device was available when this machine was manufactured. Mr. Carroll states that these excavators are versatile machines and used in many construction activities. He claims that since the rental company does not know how the machine is going to be utilized, and that workers may be in close proximity of the excavator, Daewoo should have at least educated Nations Rent in the desirability of equipping their machine with this device. In this regard, the end user of this machine has a responsibility to use this equipment in accordance with applicable industry codes, standards and good work practices. This would include not permitting construction workers to be under the excavator bucket. Mr. Celko was clearly in the path of the bucket and, therefore, his presence at

Re: Gregory Celko v. Daewoo Heavy Industries
   America Corporation, et al
June 20, 2005
Page 4 of 4

this location violated OSHA regulations and good work practices. Had Mr. Celko remained outside the path of the bucket as required, this accident would not have occurred.

The writer reserves the right to amplify the opinions rendered herein upon receipt of additional information.

Please feel free to contact me, should you require further information of discussion.

Very truly yours,

*Frank Schwalje* (cd)

Frank Schwalje, P.E.
Engineering Consultant

FS/pkd

# AFFILIATED ENGINEERING LABORATORIES, INC.
*Engineering Consultants*

1101 Amboy Avenue
Edison, NJ 08837-2856

Phone: (732) 225-0360

Fax: (732) 417-0165

| | |
|---|---|
| **Resume:** | **FRANK SCHWALJE** |
| **Education:** | Bachelor of Engineering - Mechanical<br>Pratt Institute, NY (1969)<br><br>Master of Science - N.J.I.T. (1988)<br><br>Specialized Courses<br>  Gas Distribution Course - I.G.T. (1970)<br>  Rutgers University - Advanced Management Course<br>  West Virginia University - Appalachian Underground Corrosion Course<br>      (1973 & 1976)<br>  R.W. Becket Corporation - Oil Burner Installation, Servicing and<br>  Troubleshooting Seminar (1989)<br>  Fabricators and Manufacturers Association, International -<br>  Press Brake & Shear Seminar (1998) |
| **Professional:** | Professional Engineer - New Jersey - License No. 27868<br>Professional Engineer - New York - License No. 059378<br><br>Member American Gas Association<br>Member National Fire Protection Association (Corporate)<br>Member National Safety Council (Corporate)<br>Member Society of Automotive Engineers<br>Member American Society of Mechanical Engineers<br>Member International Association of Arson Investigators<br>Member Planning Board - North Hanover Township |
| **Professional Experience:** | **Cooper Jordan Company**<br>Cost Control Department<br><br>Maintained cost expenditure records for ore mining plant construction projects<br><br>**Johnson & Johnson, Personal Products Division**<br>Engineering and Machine Design Department<br>Machine design modifications |



Ex. B

FRANK SCHWALJE — 2 —

**Beach Concrete - Contractor**
General construction work

**Public Service Electric & Gas Company**
Held positions of District Engineer, Sr. District Engineer, Asst. District Manager and District Manager

Prepared construction plans and specifications for installation of physical facilities including underground piping systems.
Performed quality control and safety audits.
Directed the District Safety Program

Investigated automotive, equipment and personal accidents
Directed physical facilities construction
Responsible for building and property maintenance, designing and implementing major capital improvements
Directed Service Department operations that provided maintenance and repairs to residential, commercial and industrial equipment including ovens, furnaces, ranges, boilers, processing equipment, dryers and other assorted equipment.
Designed and supervised installation of large volume meter, regulator and feed piping systems.
Responsible for vehicle purchase, maintenance and repair.
Investigated explosions and fires

**Schwalje & Eaton Associates, Engineering Consultant**
**Frank Schwalje, P.E., P.A., Engineering Consultant**
**Affiliated Engineering Laboratories, Inc., Engineering Consultant**

Activities include surveys, reports, models and/or designs on problems relating to product development, failure analyses, accident studies, equipment evaluation, safety standards and laboratory testing, fire and explosion investigations.