# DONOVAN HATEM LLP
## COUNSELORS AT LAW

| | | | | |
|---|---|---|---|---|
| Jeffrey L. Alitz | Neil R. Schauer | | Brian R. Beaton | Melanie A. Olson |
| Andrew P. Botti | James K. Schwartz | TWO SEAPORT LANE | Colin M. Black | Janet B. Pezzulich |
| Paul G. Boylan | Moss M. Sidell, P.C. | BOSTON, MASSACHUSETTS 02210 | Nicole Castagna | Rita E. Roach |
| John F. Bradley, II | Traver Clinton Smith, Jr. | | Matthew T. Connolly | Michael P. Roche |
| John A. Donovan, Jr. | Kenneth B. Walton | | Obadiah G. English | Mary Rosenfeld |
| Michael P. Giunta | Cheryl A. Waterhouse | TELEPHONE: 617-406-4500 | Carly B. Goldstein | Christian G. Samito |
| Edward P. Gonzales | Michael B. Weinberg | FACSIMILE: 617-406-4501 | Jeffrey W. Hallahan | *Marc Saroufim |
| Maura A. Greene | Edward C. White | www.dhboston.com | Maureen P. Hogan | Deborah F. Schwartz |
| Jay S. Gregory | David L. Woronov | | Lee McHarg Holland | Benjamin R. Sigel |
| Stephen P. Griffin | | | Michael J. Horvath | Peter P. Tobani |
| A. Neil Hartzell | Of Counsel: | KEVIN G. KENNEALLY | Donna M. Hunt | Elise S. Wald |
| David J. Hatem, PC | David H. Corkum | DIRECT DIAL: 617-406-4528 | Stefan L. Jouret | Sarah K. Wifley |
| Alan D. Hoch | David M. Thomas | E-MAIL: kkenneally@dhboston.com | Douglas M. Kalata | Michael D. Williams |
| Warren D. Hutchison | | | Devorah A. Levine | Amanda Yun |
| Kevin G. Kenneally | | | Anna F. Meschansky | |
| Damian R. Laplaca | | | Mobina F. Mohsin | *Admission Pending |
| Darrell Mook | | June 15, 2004 | Jessica L. Mooney | |
| Nancy M. Reimer | | | Matthew M. O'Leary | |
| Cory B. Schauer | | | Nicholas A. Ogden | |

*Via Certified Mail/Return Receipt Requested*
Christopher P. Flanagan, Esq.
Wilson Elser Moskowitz Edelman & Dicker, LLP
155 Federal Street
Boston, MA 02110

Re:   Celko v. Daewoo and NationsRent
      Civil Action No. 03-40029-NMG

Dear Mr. Flanagan

Kindly accept this letter as a written demand for relief in behalf of Gregory Celko, pursuant to Massachusetts General Laws, Chapter 93A, §§2 and 9, directed to Daewoo Heavy Industries America Corporation ("Daewoo"). I have addressed this letter to you because your firm represents Daewoo in ongoing litigation involving Mr. Celko in the United States District Court, District of Massachusetts, C.A. No. 03-40029-NMG. To the extent you or Daewoo contend that counsel is not the appropriate recipient of this Chapter 93A demand or if there is any claimed insufficiency in form or substance concerning the demand for relief, kindly inform us at once in writing and we will address the demand to the appropriate person at Daewoo.

BACKGROUND

As you know from your representation of Daewoo in C.A. No. 00-40029-NMG, Gregory Celko suffered severe physical injury on October 26, 2000, while employed as a laborer at a construction site in Shrewsbury, Massachusetts.

Mr. Celko was 36 years old at the time and was working adjacent to an excavator identified as a 290 LC-V (or S290-5), Serial #840, designed, manufactured, and/or sold by Daewoo Heavy Industries America Corporation and/or its related companies. On October 26,

## DONOVAN HATEM LLP
COUNSELORS AT LAW

Christopher P. Flanagan, Esq.
June 15, 2004
Page 2


2000, suddenly and without warning, a hydraulic main line hose broke loose. The bucket and arm thereby lost power, free-falling, and were caused to strike Mr. Celko, imparting serious and permanent injury. We understand that Daewoo has investigated the claim and has engaged in at least preliminary discovery. It is beyond dispute that Mr. Celko did not cause or in any way contribute to the accident or product failure and he had no prior warning of the hazard.

## II.   INJURIES AND DAMAGES

As a result of the hydraulic line failure on the excavator, Mr. Celko suffered head, face, broken teeth injuries, bruises all over as well as an awful open entry wound into his left axilla, injuring his left upper thorax and chest. He also sustained a severe displaced fracture of the left clavicle. Mr. Celko was taken by emergency personnel to University of Massachusetts Medical Center, where he was treated in the emergency room. X-rays were performed and revealed a markedly displaced fracture of the clavicle and he had symptoms of parathesias and dysesthesias in his right hand.

Mr. Celko required immediate surgery, which was complex due to the open wound on the left chest and the needed orthopedic surgery for the clavicle injury was not undertaken at that time, which led to severe pain and non-union of the clavicle. Despite conservative care and therapy, the shoulder could not heal and a second surgery, an open reduction and internal fixation of the left clavicle, was performed in February of 2001. A third surgery was needed when Mr. Celko was engaging in his prescribed physical therapy for range of motion and was found to have sustained a fracture of the plate device inserted to maintain union. The third operation, a left iliac crest bone graft and open reduction internal fixation, was performed on May 17, 2001 at U.Mass. Memorial Medical Center by Dr. Thomas Breen. He has had several additional procedures and prescribed therapy. I enclose additional copies of the medical records for your ready reference.

## III   SPECIAL DAMAGES

Mr. Celko's injuries caused by Daewoo are permanent and partially disabling. He was unable to return to work as a laborer for a lengthy period due to residual problems with his shoulder. He has recently been able to work as a welder, but at a lower hourly wage and he currently seeks paid overtime to make up the wage shortfall.

Mr. Celko was completely disabled from October 26, 2000 through May 21, 2003, when he was able to begin welding. His lost earnings through that date are approximately $108,000. He also has a claim for diminished future earnings going forward. Mr. Celko's medical expenses are in excess of $59,000. I believe you obtained the medical bills and records prior to this date. He also has sustained severely disfiguring scarring as a result of the product failure.

DONOVAN HATEM LLP
COUNSELORS AT LAW

Christopher P. Flanagan, Esq.
June 15, 2004
Page 3

## IV. LIABILITY

The trial evidence more than likely will establish that Daewoo was aware that hydraulic components can foreseeably fail while excavators are in use. The design of the Daewoo 290 LC-V, however, did not contain feasible available failsafe devices, such as holding valves, to prevent the arm and bucket from free-falling onto unaware workers below, such as Mr. Celko. The failure to incorporate inexpensive alternative features renders the product unreasonably dangerous, defective in design, and in breach of warranty under Massachusetts law. *Back v. Wickes Corp.*, 375 Mass. 633 (1978). We are interested to determine in discovery whether Daewoo considered but rejected these feasible features which are used on all types of hydraulic equipment. Even if Daewoo has some putative excuse for its failure to incorporate the free-fall prevention design, Daewoo's failure to fully and adequately warn and instruct users of this hazard separately renders the excavator defective and Daewoo in breach of the continuing duty to warn. See, e.g., *Schaeffer v. General Motors Corp.*, 372 Mass. 171 (1977); *Yates v. Norton Co.*, 403 Mass. 70 (1988); *Vassallo v. Baxter Health Care*, 428 Mass. 1 (1998).

In addition, preliminary discovery obtained from NationsRent indicates that Daewoo personnel were aware of hydraulic hose and main line problems on this and other excavators. Admissible evidence about these component failures has already been obtained and we fully expect that discovery either in C.A. No. 00-40029-NMG or the Chapter 93A action to follow (if necessary) will uncover the scope of Daewoo's knowledge about product complaints and hydraulics failures.

Daewoo is liable to Mr. Celko as the designer, manufacturer, and/or seller of an unreasonably dangerous and defective product, pursuant to Mass. Gen. L. ch. 106, §§2-314, 2-315. Moreover, a manufacturer or seller is liable in negligence as well as warranty for design defect, manufacturing defect, or negligent installation, which leads to "crimping" of a hydraulic component that causes the product to fail, free-fall, and crush a person foreseeably working near the construction equipment. Even at this early stage of the litigation, liability under one or more of the above theories is clear against Daewoo. We expect that additional discovery will establish that Daewoo became aware of its liability soon after the horrific accident. Of course, such awareness triggers statutory duties to resolve this claim with the injured worker. See, *Parker v. D'Avolio*, 40 Mass. App. Ct. 394 (1996) (failure to engage in settlement can subject defendant to 93A liability).

## V CHAPTER 93A LIABILITY

It is by now axiomatic that the negligence and breaches of warranty by an industrial product manufacturer also renders the manufacturer liable to an injured worker under Chapter

DONOVAN HATEM LLP
COUNSELORS AT LAW

Christopher P. Flanagan, Esq
June 15, 2004
Page 4


93A, permitting the claimant to recover damages, multiple damages, and fees. See, e.g., *Maillet v. ATF-Davidson Co.*, 407 Mass. 185 (1990); 940 C.M.R. §3.01 (attorney general's regulation providing that "it shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations under a warranty"). Chapter 93A also separately requires the manufacturer of an injury-causing product to promptly resolve and settle the claim. Mass. Gen. L. ch. 93A, §9(3). Despite reasonable and good faith effort by co-counsel for Mr. Celko, Daewoo has failed and refused to extend any settlement offer. The evidence at trial likely will establish not only that Daewoo's conduct caused the defective product to injure Mr. Celko, but that Daewoo was aware of the hydraulic problem before the injury. Daewoo's underlying conduct in the product liability action likely will be adjudged willful and knowing, which permits the recovery by Mr. Celko of multiple damages, plus costs and attorneys' fees. *Polycarbon Indus. Inc. v. Advantage Eng'g Inc.*, 260 F. Supp.2d 296 (D.Mass. 2003).

Moreover, the separate willful refusal to resolve this claim during the three and one-half years that have elapsed since the accident doubtless is yet another violation of Chapter 93A, and a further basis for imposition of multiple damages. The Act provides

> if the court finds for the petitioner, recovery shall be in the amount of actual damages [plus] up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two <u>or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know</u> that the act or practice complained of violated said section two.

Mass. Gen. L. Chapter 93A, §9(3). See, *Calimlin v. Foreign Car Ctr.*, 392 Mass. 228 (1984) (flat refusal to settle claim was a violation of 93A).

VI   DEMAND FOR RELIEF

Daewoo continues to have a statutory obligation under Chapter 93A to promptly resolve this matter at this juncture. Liability is reasonably clear and admissible testimony will establish that Daewoo improperly designed or manufactured the product, engaged in faulty installation of hoses, and was or should have been aware of the manufacturing defect and breach of warranty. Certainly Daewoo, now held to the standard of an "expert," was aware of the dangers of hydraulic failure and was obligated to design out the free-fall danger and/or adequately and fully warn users. *Vassallo, supra*. Additional discovery is expected to amplify the level of Daewoo's knowledge and will establish bad faith in Daewoo's refusal to resolve this action beginning quite soon after the October 26, 2000 event and continuing.

## DONOVAN HATEM LLP
COUNSELORS AT LAW

Christopher P. Flanagan, Esq.
June 15, 2004
Page 5

 

A reasonable verdict value for these permanent injuries exceeds $1,000,000, based upon the medical expenses, lost and diminished earnings, scarring, and permanent pain, impairment, and disfigurement that Mr. Celko will bear for the remainder of his life. The Life Tables published by the U.S. government estimate that Mr. Celko's expected life span is more than 38 additional years. Of course, the failure to settle this matter within the next thirty days, as required by Chapter 93A, may lead to doubling or trebling of the verdict, plus an award of all attorneys' fees, costs, plus interest. Obviously, the costs and effort that we expect will be necessary to conduct discovery and engage in the full course of litigation against this huge international industrial conglomerate will not be insubstantial, perhaps in the several hundreds of thousands of dollars. We expect to seek and recover all such fees, expenses, and costs, if this action is not promptly resolved.

In order to fully and fairly resolve this matter at once and without further litigation, and in the spirit of compromise, we hereby demand settlement in the amount of $985,000, which is substantially less than a fair verdict value with the costs, expenses, and attorneys' fees that will be recoverable. Of course, we will provide customary and appropriate agreed-upon releases upon settlement. This demand is open for the full 30-day period contemplated under Chapter 93A, at which time the demand shall lapse. Thereafter, we expect to commence an action under Chapter 93A seeking multiple damages, attorneys' fees, costs and interest.

Please contact me with any questions and let me know if this demand is required to be sent to another representative of Daewoo.

Thank you for your prompt attention to this matter.

Very truly yours,

*[signature]*
Kevin G. Kenneally

KGK/caf
00838557.DOC
cc:   Thomas B. Farrey, III, Esq.
      Stephen J. Brown, Esq.